## ORIGINAL

# In the United States Court of Federal Claims

No. 14-510C
(Filed: January 13, 2015)
UNREPORTED

**FILED**

**JAN 1 3 2015**

U.S. COURT OF
FEDERAL CLAIMS

|   |   |   |
|---|---|---|
| MICHAEL LYNN CASH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Pro se plaintiff; Third-party |
| v. | ) | beneficiary; 28 U.S.C. § 1491 |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### OPINION GRANTING MOTION TO DISMISS

*Firestone*, Judge.

Plaintiff Michael Lynn Cash ("Mr. Cash"), appearing pro se, filed a complaint and motion for leave to proceed in forma pauperis on June 16, 2014. On August 11, 2014, Mr. Cash amended his complaint. In his amended complaint, Mr. Cash claims to be a third-party beneficiary to an agreement between the United States Marshals Service ("Marshals Service") and the Oklahoma County Criminal Justice Authority ("County Authority"). Under the agreement, the County Authority provides space for the detention of individuals charged with federal claims. The agreement sets minimum standards for the conditions of confinement, including (1) trained jail staff to supervise prisoners and (2) full coverage of security posts and surveillance of inmates. Def.'s Mot., App. 6-7. To

ensure that these standards are met, the agreement provides for inspections of the County

Authority facility by the Marshals Service and authorizes the Marshals Service to share

the results of those inspections with the County Authority in order to improve facility

operations, the conditions of confinement, and levels of service. Id. Mr. Cash claims that

the United States breached the agreement by failing to "inspect the [County] facility" or

"investigate various inmate assaults" at the County facility. According to Mr. Cash, these

breaches resulted in Mr. Cash being assaulted by several violent inmates using

unsupervised tools while he was incarcerated at the County facility. Mr. Cash further

alleges that the County facility was 300% over capacity. Mr. Cash seeks

"penalties/damages" for the alleged breach of contract.

On September 2, 2014, the United States ("the government") moved to dismiss the

amended complaint. In its motion, the government argues pursuant to Rule 12(b)(1) of

the Rules of the United States Court of Federal Claims ("RCFC") that the complaint filed

by Mr. Cash must be dismissed because this court lacks subject-matter jurisdiction over

the claims made therein. In the alternative, the government argues pursuant to RCFC

12(b)(6) that the complaint must be dismissed because it fails to state a claim upon which

relief may be granted. The government argues that Mr. Cash's claims relating to his

assault sound in tort and must be dismissed because, under 28 U.S.C. § 1491(a)(1), this

court lacks jurisdiction over claims sounding in tort. The government further argues that

this court lacks jurisdiction over Mr. Cash's third-party beneficiary contract claim

because Mr. Cash has not alleged any facts to show that he was an intended, rather than

incidental, beneficiary of the Marshals Service agreement with the County Authority. In

the alternative, the government argues that the complaint fails to state a claim for breach of contract. According to the government, the agreement did not provide rights for inmates to sue in the event that the Marshals Service failed to inspect the County facilities.

In response to the government's motion, Mr. Cash argues that he is not seeking damages for a tort, but instead for a breach of contract. Further, plaintiff argues that he is a third-party beneficiary of the agreement at issue because the "care and safekeeping" of federal prisoners was among the stated purposes of the agreement. Mr. Cash contends that he has also stated a claim because the United States was required to assure compliance with the minimum standards set in the contract. In the alternative, he argues that the United States is authorized by the contract to hold the local government accountable for any debt incurred pursuant to the contract. Plaintiff argues that this clause allows him to compel the federal government to collect damages for the breach that he alleges.

I.   **DISCUSSION**

  a. **Standards of Review**

Without a waiver of sovereign immunity, no suit may be brought in the United States Court of Federal Claims. United States v. Mitchell, 445 U.S. 535, 538 (1980); United States v. Testan, 424 U.S. 392, 399 (1976). Such a waiver is made in the Tucker Act, which grants this court jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or

3

for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).  One requirement of such jurisdiction pursuant to the Tucker Act is privity of contract between the plaintiff and the United States.  Cienega Gardens v. United States, 194 F.3d 1231, 1239 (Fed. Cir. 1998).  Whether the court possesses jurisdiction to decide the merits of a case is a threshold matter, see PODS, Inc. v. Porta Stor, Inc., 484 F.3d 1359, 1364 (Fed. Cir. 2007) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998)), as a case cannot proceed if a court lacks jurisdiction to hear it, see Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." (citation omitted)).  See generally John R. Sand & Gravel v. United States, 552 U.S. 130 (2008), aff'g 457 F.3d 1345 (Fed. Cir. 2006).

The plaintiff bears the burden of establishing subject-matter jurisdiction, Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing McNutt v. Gen. Motors, 298 U.S. 178, 189 (1936)), and must do so by a preponderance of the evidence, Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).  In ruling on such a motion, the court will "consider the facts alleged in the complaint to be true and correct."  Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995); Reynolds, 846 F.2d at 747.  In addition, the court may consider materials outside of the pleadings to determine whether it has subject-matter jurisdiction over a claim. Aviation Software, Inc. v. United States, 101 Fed. Cl. 656, 661 (2011) (citing Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991)).

4

In addition, when considering the dismissal of a pro se complaint, the court holds "the pleading 'to less stringent standards than formal pleadings drafted by lawyers.'" Johnson v. United States, 411 F. App'x 303, 305 (Fed. Cir. 2010) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). Despite this permissive standard, a pro se plaintiff must still satisfy the court's jurisdictional requirements. Bernard v. United States, 59 Fed. Cl. 497, 499 (2004) ("This latitude, however, does not relieve a pro se plaintiff from meeting jurisdictional requirements."), aff'd 98 F. App'x 860 (Fed. Cir. 2004).

### b. This Court Lacks Jurisdiction Over Plaintiff's Claim

Because the plaintiff acknowledges that his case may be heard only if he is a third party beneficiary of the agreement between the Marshals Service and the County, the court will focus on that question.[1] After considering the arguments in the parties' briefs, the court finds that it must agree with the government that plaintiff is not an intended third-party beneficiary and, therefore, that there is no waiver of sovereign immunity and this court does not have subject matter jurisdiction over his claim. It is well-settled that "before a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement to which he is not a party, he must, at least, show that it was intended for

---

[1] The government is correct that, to the extent plaintiff's claim sounds in tort, it cannot be heard in this court. 28 U.S.C. § 1491(a)(1). Moreover, to the extent that Mr. Cash argues that he can sue the United States to compel the government to seek payment from the County Authority for a tort, this court lacks equitable jurisdiction to sue on his behalf. United States v. Tohono O'Odham Nation, ── U.S. ──, 131 S.Ct. 1723, 1729 (2011) ("Unlike the district courts, however, the [Court of Federal Claims] has no general power to provide equitable relief against the Government or its officers." (citations omitted)); Visconi v. United States, 455 F. App'x 986, 988 (Fed. Cir. 2012) ("The Tucker Act does not provide independent jurisdiction over claims for equitable relief." (citing Brown v. United States, 105 F.3d 621, 624 (Fed. Cir. 1997), reh'g denied (1997))).

his direct benefit." German Alliance, 226 U.S. 220, 230 (1912); see also Sullivan v. United States, 625 F.3d 1378, 1380-81 (Fed. Cir. 2010) (quoting Montana v. United States, 124 F.3d 1269, 1273 (Fed. Cir. 1997)). In other words, the plaintiff must demonstrate that the contract at issue was specifically intended to provide him with protection from any harm while he was incarcerated in the County facility.

A review of the agreement between the Marshals Service and the County Authority demonstrates that it was entered into to provide housing to federal prisoners and did not give prisoners any special rights. In particular, the agreement states that its purpose is to provide for the "detention of persons charged with or convicted of violations of federal law or held as material witnesses (federal prisoners) at the [County Authority] facility." Def.'s Mot., App. 2. In exchange for payment and subject to certain restrictions, the County Authority agreed to "accept and provide for the secure custody, care and safekeeping offederal [sic] prisoners in accordance with federal, state, and local law, standards, policies, procedures, or court orders applicable to the operations of the facility." Id. The next sentence of the agreement states that "[t]he [Marshals Service] considers all federal prisoners medimn/maximum [sic] security-type prisoners that are housed within the confines of the facility, at a level appropriate for prisoners considered a risk of flight, a danger to the community, or wanted by other jurisdictions." Id. Thus, while the agreement does provide certain minimum standards for the confinement of the prisoners—which do not include protection of prisoners from other prisoners—it is clear that the principal intent of the agreement is to house the prisoners in a way that keeps the public safe and that the minimum standards are designed for this purpose. Nothing in the

agreement suggests that it was intended to give prisoners the right to enforce the agreement or sue the United States in the event the United States Marshals Service failed to inspect the County facility or protect individual inmates from other inmates.[2]  The court therefore finds that plaintiff is not an intended third-party beneficiary of the agreement but rather, at best, an incidental beneficiary.  As a result, a waiver of sovereign immunity, which is necessary for this court to have jurisdiction, does not exist.

## II.    CONCLUSION

Because the plaintiff is not a third-party beneficiary to the agreement between the Marshals Service and the County, sovereign immunity is not waived and the court lacks jurisdiction to hear the case.  Accordingly, the government's motion to dismiss for lack of subject matter jurisdiction is **GRANTED**.[3]  The Clerk is directed to enter judgment accordingly.  The parties shall bear their own costs.

**IT IS SO ORDERED.**

NANCY B. FIRESTONE
Judge

---

[2] Indeed, where the parties intended to do so, the agreement does specifically discuss third-party liability.  First, when transporting prisoners for medical treatment or to a federal courthouse, the County Authority "agrees to hold harmless and indemnify the [Marshals Service] from any liability, including third-party liability or workers' compensation, arising from the conduct of local jail employees . . . ."  Def.'s Mot., App 7-8.  In both cases, it is clear that the third-parties considered are members of the public.  Even so, the agreement does not grant any additional rights to those third-parties, but rather confirms the liable party.

[3] Plaintiff additionally moved for leave to proceed in forma pauperis, Docket No. 6.  That motion is **GRANTED** for purposes of filing the complaint.

7